## SAMUEL STEARNS *versus* THE FIRST PARISH IN BEDFORD.

If a minister and his parish should agree that the decision to be made by an eccle
siastical council, prescribing the terms on which the connexion between them
should be dissolved, should be binding upon the parties, this Court, *it seems*, would
have jurisdiction in equity to compel a specific performance of the decision.

Where an ecclesiastical council recommended that the connexion between a minister
and his parish be dissolved upon their paying him a certain sum of money and
cancelling a bond given by him, and the minister gave notice to the parish that he
accepted the result of the council and should perform it on his part, and a com-
mittee of the parish made a report in favor of accepting the result whenever the
pecuniary means and the unanimity of the parish would justify the measure, and
the parish accepted the report and appointed a larger committee with power to
accept the result of the council when they should find adequate means in the parish
treasury, and should deem it for the interest of the parish to do it, but this com-
mittee never did accept the result and the parish never performed either of the
conditions required of them, it was *held*, that the result had not been accepted by
the parish, and that the parties remained in the same relation to each other as if
no council had been convened.

Where the result of an ecclesiastical council, called by a minister and his parish, is
the recommendation of acts and conditions to be performed by each party, the
performance by one party will not of itself impose legal obligations on the other
but the assent of both is indispensable to give validity to the decision.

If the advice of the council be simply, that the ministerial relation between them be
dissolved for any sufficient cause, either party will be justified in acting according
to the advice.

But if the advice be, that the ministerial relation be dissolved, upon the terms that
the minister relinquish a part of his salary due, and that the parish give him a sum
of money or a specific article, the performance by one party will not give such
party a remedy, in law or equity, to compel performance by the other.

It was voted by a parish, that it was expedient that the minister's connexion with

the parish should be dissolved, and a committee was chosen to take all necessary measures to have an ecclesiastical council convened to hear all matters of complaint against him, together with the present state and condition of the society, and to judge, determine and decide the question, Is it expedient, proper and just that his relation to the society as their pastor be dissolved; and the committee, in pursuance of this authority, proposed a mutual council, to which the minister assented. A council was thereupon duly convened, who came to the result, that it was expedient, proper and just, that the connexion should be dissolved on suitable pecuniary considerations, and that in their view it was suitable that a bond given by the minister to the parish should be cancelled, and that a certain proportion of the sum due on account of his salary should be received by him in full discharge of all his demands against the parish. It was *held*, that the parties did not intend to constitute the members of the council arbitrators to decide authoritatively the matters submitted to them, but that they intended to agree upon an ecclesiastical council with the usual powers and authority of such a body ; and that the result or decision of the council was only advisory, and not an authoritative award which might be the foundation of a suit at law, or the subject of a decree for specific performance in chancery.

BILL in equity, dated August 6, 1833, stating, that in January, 1796, the plaintiff was settled for life as a minister of the Gospel in Bedford (there being then but one parish in the town), in consideration of an annual salary of $333 and twenty cords of fire wood ; that from that time until the 27th of April, 1833, he faithfully performed the duties of a minister in the parish ; that in 1801, upon his application for an increase of his salary, the parish proposed to raise it, and to lend him 1000 dollars without interest during the time he should supply the pulpit, he giving security to repay the principal when he should cease to supply the pulpit ; that he acceded to this proposal, and gave his bond accordingly, with sureties, for 1000 dollars, and received the money ; that in 1811 his salary was further raised to 500 dollars and 20 cords of wood ; that on the 18th of December, 1832, at a meeting of the first parish in Bedford, to take into consideration the expediency of obtaining a dissolution of the ministerial connexion existing between the Rev. Samuel Stearns and the first parish in Bedford, it was voted, that "it is expedient that said connexion be dissolved, and a committee of five persons was chosen to carry the vote into effect," with power to employ counsel, to collect and make out charges against the moral and ministerial conduct of the Rev. Samuel Stearns, pastor, &c., and in due season to furnish him with a copy of such complaint or articles of

impeachment, and request him to join and coöperate with said society in choosing, by their committee, and calling a mutual ecclesiastical council to hear all matters of complaint against him, together with the present state and condition of the society, to judge, determine and decide the following question, viz. Is it expedient, proper and just, that the relation of the Rev. Samuel Stearns to the First Congregational Society in Bedford, as their pastor, be dissolved;" that it was also "voted, that the clerk transmit forthwith a copy of the doings of this meeting to the pastor; for we feel ourselves morally absolved from longer contributing to his support, and the contract existing between the said Stearns and society is, and of right ought to be dissolved;" that the plaintiff consented to join with the parish in calling such council, and to submit to them the several matters specified in the vote; that the plaintiff and the parish, by their committee, appointed seven clergymen (naming them) who, with one delegate to be chosen by each of the churches with which six of them were respectively connected, were to constitute the council; that the plaintiff and the parish submitted to the council, "to judge, determine and decide" the question, "whether it were expedient, proper and just, that the relation of the plaintiff to said First Congregational Society, as their pastor, be dissolved;" and in and by the submission the parties submitted to the decision of the council the adjudication and determination of the terms and conditions on which the dissolution of that relation should take place, if it should be determined to be expedient, just and proper, that a dissolution should take place; that the council assembled at Bedford on the 27th of February, 1833, and heard the parties, and made known their decision, award and result, that "no charge whatever has been sustained against the moral or Christian character of the Rev. Mr. Stearns, and they rejoice that the committee of the parish expressly disowned any intention to fix any criminality on Mr. Stearns;" that "it is expedient, just and proper, that the relation of the Rev. Samuel Stearns to the First Congregational Society in Bedford, as their pastor, be dissolved on suitable pecuniary considerations;" "that in the judgment of this council, a suitable pecuniary consideration would be made by adopting

the two following principles, viz. that the note or bond for $1000, now held by the town or parish against the Rev. Samuel Stearns, be cancelled ; and that in respect to the salary from November, 1832, to the day on which the connexion shall be dissolved, the payment by the first parish, of such proportion of the whole sum due for that period of time, as the amount of taxable property belonging to the first parish or. the 28th of February, 1833, bears to the whole amount of taxable property belonging to both the first parish and the new society on the same day, shall be considered and taken as a full discharge by the Rev. Samuel Stearns, of all demands against said first parish for salary during that period ; " " that when the above conditions are complied with, by the First Congregational Society in Bedford, the ministerial connexion of the Rev. Samuel Stearns with said society be dissolved, and is by such compliance dissolved." " The council have great pleasure in observing the liberal conduct of the town and parish towards the Rev. Mr. Stearns from the time of his settlement until the origin of their recent difficulties, and conclude their result by expressing their earnest hope, that their advice and decisions will be approved by those at whose request they have been convened, and promote their best interests, the peace and happiness of this community, and the kingdom of Jesus Christ in this place."

The plaintiff further says, that after the result of the council was made known, and on or about the 10th of March, 1833, he made known to the parish that he should accept the result, and was ready to perform whatever he was required by it to perform ; that the parish, on the 22d of April, received the report of a committee appointed in March, in which the committee say, that they feel it a duty incumbent on them to express their satisfaction with the decision of the council " on the question submitted to them for their consideration, namely, Is it expedient, proper and just, that the connexion, &c. be dissolved. The care taken by the council, that the parish should not suffer by a division of the society, in which the Rev. Mr. Stearns was charged with having an agency, the reduction of his salary from the 9th of November, 1832, to the day on which the connexion shall be dissolved, being in amount equal

to the proportion of all the taxable property which formed the new society, proves to the satisfaction of the committee, that the council considered their main charge as fully substantiated. And although the decision was connected with a pecuniary consideration, not submitted by the parish, the committee feel confident, that the council, seeing the past generosity of the parish to their pastor, &c. concluded that the parish would not shrink from performing a deed of charity, by cancelling a debt of $1000, due from said pastor to said parish, which sympathy seemed to require for an aged minister. The committee ask leave to report, that in their opinion it will be best for the parish to accept the result of the council, when they shall be possessed of adequate funds for settling with the Rev. Mr. Stearns, and such unanimity shall prevail in the parish as to warrant the belief that it will be for their interest to do it." The parish accepted the report, and chose a number of persons to be joined to the last-mentioned committee, and voted " that the said committee have full powers to accept of the award of the ecclesiastical council, &c. when they shall find adequate means in the treasurer's hands for that purpose, and shall deem it to be for the interest of the parish to do it. And said committee are hereby authorized to provide for preaching of the Unitarian denomination, to supply the pulpit when necessary."

The plaintiff further alleges, that he hoped and expected that the parish would perform the award and result within a reasonable time, and awaited a compliance therewith, and that he continued to perform all his ministerial duties in the parish, as far as the parish would permit him to perform them, until after the parish had held three meetings subsequent to the meeting of the council, and until the 27th of April, 1833, on which day his salary for the next preceding year became due; and on that day, a reasonable time having elapsed for the compliance of the parish with the award and result of the council, and there being no sufficient hindrance or impediment to their acceptance, the plaintiff sent to the committee last mentioned, a notice to the parish, that " having accepted said result, and having complied with the same to the present time, he considers his connexion with said parish dissolved by said result and the vote of the parish passed at their meeting on the 22d

of April instant, and that he desires a final settlement with said parish, on the terms prescribed by said result."

The plaintiff further states, that he never sought a dissolution of his connexion with the parish ; but that the parish, being induced thereto by a change in the religious sentiments of a majority of the parishioners, and not by any change in the plaintiff's sentiments, did at different times and for a long period, without his consent and against his wish, employ several ministers of the Gospel, of a denomination of Christians different from his own, to preach to them in the pulpit which he had long occupied ; and that he did not seek nor desire to have an ecclesiastical council called, but the parish demanded a council ; and that the parish accepted the result.

The plaintiff further alleges, that the parish refuse to comply with or perform the award and result, and prays for a decree that his bond be delivered up to be cancelled, and that the parish pay him his salary due to him by the award and result of the council.

The defendants demur to the bill ;

1. Because the Court has not jurisdiction, inasmuch as the bill does not set forth any case, either of a trust, or of a contract in writing, where any party claims the specific execution of the same, and where there is not a plain, adequate and complete remedy at law.

2. Because the object of the bill is to obtain a decree for the specific performance of a pretended award of the ecclesiastical council, whereas the result of the council imports only an expression of their opinion in the way of recommendation and advice, and was not intended to be an authoritative decision in any way binding on these defendants.

3. Because it appears by the plaintiff's own showing, that the persons composing the council were not authorized to act as arbitrators and to decide any question of pecuniary consideration, or to make any binding determination or award between them, but were merely invited, according to ecclesiastical usage, to advise with the parties whether it was expedient, proper and just, that the relation between the parties should be dissolved.

4. That the bill does not contain any matter of equity.

Stearns<br>
v.<br>
First Parish<br>
in Bedford.

whereon this Court can give the plaintiff, as against these defendants, any manner of relief.

The case was argued in writing.

*Stearns*, in support of the first cau.e of demurrer, cited *Ford* v. *Peering*, 1 Ves. jun. 77 ; *Williams* v. *Steward*, 3 Meriv. 503 ; *Burr* v. *Sandwich*, 9 Mass. R. 295 ; *Flood* v *Finlay*, 2 Ball & Beatty, 16 ; *Harnett* v. *Yielding*, 2 Sch & Lefr. 554 ; *Colson* v. *Thompson*, 2 Wheat. 341 ; and in support of the third, *Blundell* v. *Brettargh*, 17 Ves. 243 ; and in support of the fourth, *Nutbrown* v. *Thornton*, 10 Ves. 161 ; *Mason* v. *Armitage*, 13 Ves. 37 ; *Harnett* v. *Yielding*, 2 Sch. & Lefr. 553.

*Hoar*, for the plaintiff, cited in reference to the first cause of demurrer, *St.* 1817, *c.* 87 ; *Cochran* v. *Camden*, 15 Mass. R. 303 ; Bigelow's Dig. (edit. 1825) *tit. Parish*, 562, note ; and in reference to the fourth, *Newman* v. *Milner*, 2 Ves. jun. 483 ; *Blundell* v. *Brettargh*, 17 Ves. 241.

MORTON J. delivered the opinion of the Court. This bill is founded upon the statute of 1817, *c.* 87, which gives to this Court jurisdiction in " all cases of contract in writing, where a party claims the specific performance of the same, and in which there may not be a plain, adequate and complete remedy at law." The plaintiff alleges that he had for many years been the settled minister of the defendant parish ; that differences of opinion and controversies had arisen between them, and questions existed concerning the continuance or dissolution of that relation ; that the parties agreed to submit these controversies and questions to the examination·and determination of an ecclesiastical council ; that such a council was duly selected and organized ; that it proceeded to hear the parties and to investigate the matter submitted to it ; and that it made an award or determination which the defendants accepted and adopted, but refuse to perform and execute ; and the plaintiff prays for a decree of this Court to compel a performance of the same.

The defendants, by their demurrer, admit all the *facts* directly and sufficiently set forth by the plaintiff in his bill, but not the inferences of law or fact which he may draw from them, nor the constructions which he may put upon the agree·

ments recited.  *Ford* v. *Peering*, 1 Vesey jun. 77 ; *Williams* v. *Steward*, 3 Meriv. 503 ; *Jones* v. *Boston Mill Corporation*, 4 Pick. 507.

No question arises in relation to the mode of proof.  Whatever contract existed between the parties was in writing.  Nor is there any doubt that it is truly set forth in the bill.  So that the case comes before us upon its true merits, and its decision must depend upon the construction of the submission, and the award or result of the council.

If the defendants did agree to abide by and perform the determination of the council ; and if the council did make an award, in pursuance of the authority given to them, we have no doubt that, under the circumstances of this case, its specific performance may be decreed by a court of equity.  *Jones* v. *Boston Mill Corporation*, 4 Pick. 507 ; *Norton* v. *Mascall*, 2 Vern. 24 ; *Hall* v. *Hardy*, 3 P. Wms. 186 ; *Bouck* v. *Wilber*, 4 Johns. Ch. R. 405 ; *Wood* v. *Griffith*, 1 Swanst. 54.  See also 2 Story's Eq. 681 ; Kyd on Aw. 332 *et seq.*

But the defendants, in the first place, deny that according to the true construction of the agreement between the parties, they ever contracted to be bound by or to perform any award which the council should make ; and in the next place, if they are mistaken in this, they deny that the council ever did make any authoritative and obligatory award.

We will first examine the agreement and proceedings of the parties, in relation to the calling of a mutual council.  And, for this purpose, it will be necessary to advert to the origin and history of the unfortunate misunderstanding which grew up between this clergyman and the people of his charge.

The plaintiff having been called by the church and parish in Bedford, according to the usages of congregational churches, and having accepted the invitation, was ordained in January, 1796, and thus became legally and ecclesiastically the pastor of the church and the minister of the parish.  He continued to officiate as such till April, 1833.  Before this time differences of opinion had arisen between the plaintiff and some of his parishioners, and a majority of them had become dissatisfied with his religious tenets and his discharge of his official functions.  In December, 1832, a parish meeting was holden,

"*to take into consideration the expediency of obtaining a dis-solution of the ministerial connexion existing between the Rev. S. Stearns and the first parish in Bedford.*" At that meeting the parish voted, " that it is expedient that said connexion be dissolved " ; " and a committee was chosen to carry the same into effect, with power to employ counsel, to collect and make out charges against the moral or ministerial conduct " of the plaintiff, and to take all the necessary measures to have an ecclesiastical council convened " to hear all matters of complaint against him (the plaintiff) together with the present state and condition of the society " and to " *judge, determine and decide* " the following question, viz. " Is it expedient, proper and just, that the relation of the Rev. S. Stearns to the First Congregational Society in Bedford, as their pastor, be dissolved ? " The parish also, at the same meeting, passed the following declaratory vote ; that " we feel ourselves morally absolved from longer contributing to his support, and the contract existing between the said Stearns and society is, and of right ought to be, dissolved."

The committee, in pursuance of the above authority, proposed a mutual council, which was acceded to by the plaintiff The parties having agreed upon the clerical members, a council was duly convened and ·organized according to the usage of congregational churches in this Commonwealth. And the question before stated was by mutual agreement laid before them, and submitted to them, " *to judge, determine and decide* " thereon. The council accordingly proceeded to hear the parties and to deliberate upon the matter referred to them, and came to a result which will hereafter be stated and examined.

We will first seek for the true intent and meaning of the parties in this agreement to refer their controversies to this tribunal. Did they mean to constitute the individuals composing this council arbitrators, authoritatively to decide the matter referred to them ? Or did they intend to agree upon an ecclesiastical council with the usual powers and authority of such a body ? The former, we think, cannot be affirmed with reason or even plausibility. The whole course of the proceedings of the parish and their committee, as well as the nature of the

subject upon which they were acting; the very number and situations of the component parts of this board, as well as the mode of selecting the lay members of it, irresistibly lead to the conclusion, that the parties contemplated an ecclesiastical council and not an arbitration. If any confirmation were necessary, it might be derived from the judgment of this respectable body, in relation to the nature and extent of their own functions, as is clearly indicated by the manner of their organization, the form of their proceedings, and their own declaration contained in their annunciation of their determination.

Nor is there any reason to suppose that the parties undertook or intended to clothe this tribunal with any special or extraordinary powers, or to give it any authority other than that usually exercised by ecclesiastical bodies of this description; or that the council supposed that they were invested with or assumed any such unusual authority. It is true that the parties did attempt to specify the subject and define the limits of their investigation with more than usual precision. But this, if it had any effect, operated as a restriction and not an extension of their powers.

We find, therefore, that the parish having become dissatisfied with their pastor, desired to obtain his discharge from his ministerial relation to them; that upon their application a mutual council was convened for the investigation of some of the controversies existing between the parties, and that this council proceeded in the usual ecclesiastical manner, in the discharge of the duties assigned them. How far then was their decision binding upon the parties? And can it be enforced in a court of chancery?

The parties in agreeing to submit their controversies to a *council*, by necessary implication, agreed to be bound by their decision so far as such a tribunal had a right to bind them, and no further. If they intended to go further, they should have expressed such intention. It cannot be inferred from any thing which they did. The words used, " *to judge, determine and decide* ' the question submitted, do not necessarily imply it. Who was *to judge, determine and decide?* An *ecclesiastical council.* How were they to do it? As an

*ecclesiastical council*, with the powers of such a body, and their decision was to have the force and effect of a decision of such a body.

But what were the council to "judge, determine and de-cide," — to pass their judgment upon ? What was the precise question submitted to their determination ? Not whether the plaintiff be dismissed, — not whether he has forfeited his cleri-cal office, — but whether it be *expedient, proper and just*, that the relation between the parties should be discontinued : clearly and decisively indicating an advisory determination, an opinion, of what, under the existing circumstances, ought to be done, and not an authoritative award, which might be the foundation of a suit at law, or the subject of specific performance, in chancery.

We think that it is apparent from all the proceedings of the parties, that they intended to refer their controversy to a mutual council, and to give to their determination the usual force and effect, and nothing more. How far is their adjudi-cation obligatory on the parties ? And how far can it be recognised and enforced by a judicial court ?

An ecclesiastical council is a tribunal well known in the history of our Commonwealth, and recognised and regarded in judicial decisions. It is one frequently resorted to in the settlement of clergymen, in reconciling and healing differences and divisions in churches, and in adjusting and terminating controversies between pastors and their churches and parishes. But notwithstanding the frequency of their occurrence, it is not easy accurately to define their powers, or to ascertain the pre-cise force and effect of their adjudications.

It is frequently called an advisory court. Its determination or result is often called *advice*, and is usually if not uniformly given in the form of counsel to the parties. And the benefits so often derived from the action of these tribunals depend more upon the respectability of the members and their collective and individual moral influence, than upon any legal effect which can be given to their decisions.

In the earliest reported case upon this subject, the late learned Chief Justice *Parsons* said, that "the result" of an ecclesiastical council "is so far of the nature of an award

made by arbitrators, that either party conforming thereto will be justified." *Avery* v. *Tyringham*, 3 Mass. R. 182. And in another leading case, *Burr* v. *First Parish in Sandwich*, 9 Mass. R. 288, the same learned judge stated, that " the advice of a council properly chosen and acting fairly and honestly, will justify either party in adopting their result." Again in the same case, *p.* 295, it is said, " the result of a mutual council, legally convoked, will not bind either party rejecting it. The effect of the advice of a council is nothing more than a legal justification of the party who shall adopt it."

Now it is apparent from the principles above laid down, that the result of a council, of its own intrinsic validity, is never obligatory upon the parties. Both may always reject it, and remain in the same situation as before. It has not therefore the force of a judgment or an award. It is said that it will justify the party adopting it, and yet that it will not bind the party rejecting it. This may sometimes be correct. But in many cases, it is not easy to see how it will justify the one party, and not bind the other.

The Court always look behind the adjudication, and before the result can be received as evidence or allowed to have any validity, they will examine the proceedings to ascertain whether there was a suitable case for the convocation of an ecclesiastical council, whether the members were properly selected, whether they proceeded impartially in their investigation, whether their adjudication was so formally made that it may be seen that they acted with due regard to the rights of the parties, and that they founded their decision upon grounds which will sustain it. *Thompson* v. *The Cath. Congr. Soc. in Rehoboth*, 5 Pick. 469 ; *Same* v. *Same*, 7 Pick. 160.

In short, the doctrine of these cases is, that the result of a council is only *prima facie* evidence and derives its binding force mainly from the consent of parties. In the case last cited it is laid down, that the results of ecclesiastical councils " are never binding and conclusive, unless assented to by the parties, until after they are sanctioned by legal adjudication."

But even where the convocation and proceedings of the council are regular and satisfactory, the rule laid down in *Avery* v. *Tyringham* must be taken with some qualification. It is

not of universal application.   Where the result of council is the recommendation of acts to be .done and conditions to be performed by each party, the performance by one party will not impose legal obligations on the other.   In such cases the assent of both parties is indispensable to give validity to the decisions of council.

But if the advice of council be, that the ministerial relation between a pastor and his parish be dissolved, for any sufficient cause, or that the former, for any misconduct, has forfeited his office, the principle applies ; and the party adopting it will be justified.   The pastor may cease to perform his official duties without subjecting himself to legal liability, and the parish may reject his services and will not be further liable for his salary. But if the council advise, that the pastor relinquish a part of his annual salary and that the parish give to him a stipulated sum or some specific article, and that the connexion be dissolved on these terms, the performance by one party would not give him a remedy in law or equity, to compel performance by the other.   Of this nature was the advice of the respectable council in this case.   It was but the recommendation of the terms on which the parties should adjust and settle their controversies, and could have force but from the agreement of the parties.

The council themselves seem to have put the same construction upon the agreement of the parties in submitting their controversies to them.   They did not undertake to arbitrate between the parties ; but manifestly meant to confine themselves to their ecclesiastical functions, and to give such counsel as would commend itself to the sound sense and good feelings, and, if followed, would promote the peace and happiness of all concerned.

The parish manifestly acted under the belief, that the moral and ministerial conduct of the plaintiff had been such, especially when connected with the divided state of the parish, as to justify and require his immediate dismission.   And accordingly they determined for themselves, that their contract with the plaintiff had ceased to be binding and was dissolved.   But still, agreeably to ecclesiastical usage, they desired to have the subject referred to an ecclesiastical council.   And their com

mittee were authorized to prepare charges and to lay the whole matter before the council. The question which the parish intended to submit, and which they authorized their committee to submit, was whether there existed sufficient causes for the dismission of their minister; and the tribunal to whom this question was to be referred was an ecclesiastical council. Had the committee entered into an arbitration, or had they clothed the council with unusual powers, they would have exceeded their authority and the parish would not have been bound by their acts. But we have already shown that no such thing was intended. There seems to be a difference of opinion between the parties in relation to the reference of the terms and conditions of a dismission ; the one believing and the other denying that it was agreed to : and on the whole we can see no satisfactory evidence that the committee did give their assent to it. And had the council been arbitrators and awarded that the plaintiff be dismissed on the terms and conditions stipulated in their result, it may well be doubted whether it would have been within their authority. But acting as an ecclesiastical and advisory body, they took a more liberal and more correct view, and did not restrain their good offices by any of the technical rules which might have bound a court or an arbitrator.

There can be no doubt that the general reference of the question of dismissing a clergyman, to an ecclesiastical council, carries with it, by long usage and by necessary implication, the authority to consider and recommend such terms and conditions as they shall think just and reasonable and for the interest of the parties. *Cochran* v. *Camden*, 15 Mass. R. 296. There is not the slightest reason to suppose that the council in this case exceeded their proper functions or departed from their appropriate sphere of action.

The council, knowing the disaffection of the parish to their pastor and their desire to be relieved from their parochial obligations to him, but at the same time finding nothing in his conduct which would amount to a forfeiture of his office or constitute an adequate cause for his dismission, recommended that the defendants' wishes should be complied with upon such terms as they thought reasonable and just to both parties.

The defendants were the applicants. Their application was granted upon the performance of certain acts by them. These were conditions precedent. If they were performed, the dissolution was to take effect. If not, the connexion was to remain unimpaired. The council advised the defendants to perform them. How this advice was regarded remains to be inquired into.

The council expressly negative any imputation upon "the moral, Christian or ministerial character" of the plaintiff, and carefully exclude any inference that their result was, in any degree, founded upon any violation or neglect of duty on the part of the plaintiff. But their result was manifestly intended by them as advice or recommendation. And they conclude "by expressing their earnest hope, that the advice and decisions will be approved by those at whose request they had been convened and promote their best interests."

The council having recommended the adjustment of the controversies between the parties and the dissolution of the connexion between them upon certain terms and conditions, it only remains for us to consider whether their recommendations were adopted by the parties. There can be no doubt that the plaintiff did every thing which was incumbent on him to do, to give effect to the advice of the council. Their advice, as we have shown, could have no binding force, but from the consent of parties. It was but the recommendation of the basis of an agreement, — of the terms upon which the parties should conclude a mutual compromise. The plaintiff offered to accede to them. If the other party did the same, it became perfect and formed a compact; otherwise it remained imperfect and ineffective. The defendants certainly had the option to accede to or reject this proposed compromise. However much they might desire the dismission of their minister, they might determine that in view of all the circumstances, the price which they were required to pay was more than the object was worth to them. They had the right and might well elect to continue their connexion with the plaintiff, rather than to perform the conditions which were annexed to the dissolution. And this would be rendered the more reasonable and probable, by the acquittal of the plaintiff of all criminality and impropriety of professional conduct.

The parish proceeded to act on the propositions offered to them, indirectly through their committee and directly by their own votes. In determining the import and effect of the acts of the parish, the report and votes must be construed together. By accepting the report of the committee, the parish adopted it as their own, and must be bound by it.

The committee, in their report, express their approbation of the result of the council and recommend the adoption of it, when the pecuniary means and the unanimity of the parish would justify the measure. Now it is very apparent that the recommendation of the committee was not the immediate or even the eventual acceptance of the terms proposed. It contemplated future action on the subject. The adoption of the report could not be an acceptance of the result of the council; nor did it imply an opinion, that at any future time it would be expedient to accept it. This, according to the language used by the committee, must depend on contingent, future events, viz. the pecuniary means and the unanimity of the parish; of which they were afterwards to judge.

Although the approbation of the proceedings of the council, by itself, unexplained, might amount to an acceptance of them, yet it does not necessarily imply it and certainly is open to explanation. The defendants, from what transpired on the investigation and from their confidence in the council, might be satisfied with an adjudication against them. Indeed the act of the council in exonerating the plaintiff from all the charges against him, might be a good reason for not acceding to the terms of his dismissal. At any rate, we think it very clear that the report of the committee and the action of the parish upon it, cannot be construed into an agreement to the terms proposed by the council.

But if any doubt existed, the subsequent acts of the parish would remove it. They immediately appointed a larger committee and authorized them to determine when their situation would justify the acceptance of the recommendations of the council. This committee never did accept them.

The parish never did, in fact, give up or cancel the plaintiff's bond, nor perform any of the conditions for them to perform, to give effect to the advice of council.

Stearns
*v.*
.First Parish
in Bedford.

The parties, doubtless, were bound to act upon the result of the council in a reasonable time. And if one party acceded to the terms proposed and the other unreasonably neglected to act upon them, perhaps his assent would be implied or he would afterwards be precluded from rejecting them. But where a corporation is a party, a greater latitude would be allowed, and the Court would be slow to imply an assent from a mere neglect to act.

But although a considerable delay took place in this case, and the parish did not act with so much promptness or frankness, as would have become their own character and was due to the long services of their aged pastor, and although the reports and proceedings of the parish were calculated, if not intended, to mislead and embarrass the plaintiff, yet we cannot perceive any thing which amounts to an acceptance or assent to the advice of the council. The result of the whole is, that the labors and good offices of this ecclesiastical council have been rendered, by the conduct of the defendants, entirely ineffective, and the parties remain in the same relation to each other as if no council had been convened.

However we may regret that the parties did not follow the excellent advice of this ecclesiastical council, which they themselves seem highly to approve, we are of opinion that it cannot be enforced by a court of chancery or any other judicial tribunal.

*Bill dismissed.*

Bacon
*v.*
Lane.

NOTE. At October term 1838, a case came before the Court growing out of the same proceedings. It was an action of debt on the bond before mentioned, given by the Rev. Samuel Stearns, and was brought in the name of John Bacon, as treasurer of the parish, against Solomon Lane, one of the sureties. The bond was dated November 16, 1801, and the obligors bound themselves, under a penalty of $2000, to pay to the treasurer the sum of $1000, when " the said Samuel Stearns, clerk, shall cease to supply the desk in said town of Bedford as the gospel minister, and if not paid at that time, then to be on interest until paid." It was agreed that Mr

Stearns ceased to supply the pulpit of the first parish in Bedford from the 27th of April 1833, and that for some time after that day he performed the duties of a minister in another society in the town. In addition to the proceedings stated in the bill in equity, it appeared that on May 30, 1833, the committee of the parish addressed a letter to Mr. Stearns, giving him notice that they could not deem it for the interest of the parish to accept the result of the ecclesiastical council; and alleging that the council had left it solely to the act of the parish to dissolve the connexion by complying with the requisitions of the result; and informing him that the committee did not consider the connexion between him and the parish dissolved.

The case was argued by *Farley*, for the plaintiff, and *Hoar*, for the defendant.

MORTON J. delivered the opinion of the Court. The principles established in the case of *Stearns v. The First Parish in Bedford*, are decisive of this action. In that case it was decided, that inasmuch as the parish had not adopted the result of the ecclesiastical council which had been agreed to by them and their pastor, it had no effect to dissolve the connexion between them, but that that relation continued to exist as before. And, of course, that each had the same duties to perform and were under the same obligations, as if no council had been convoked. The bond now in suit, therefore, remained in force. And according to the terms of the obligation, the money became payable when the principal obligor ceased "*to supply the desk &c. as a gospel minister.*" This event had happened, by his death or otherwise, before the commencement of this action. The plaintiff therefore is entitled to recover. The penalty of the bond is forfeited, and he must have judgment.

But there must be a hearing in chancery to ascertain the amount for which execution shall issue. The only question which can arise upon this hearing will relate to the time for which interest shall be computed. Perhaps the parish will be content to take interest from the death of their late pastor. If ey claim more, the burden of proof will be upon them to

Bacon
*v.*
Lane.

*Oct. 16th,*
1838.

*Oct. 20th.*

show that, before that time, he had, by some neglect or fault, forfeited his right to the use of this money.

*Defendant defaulted ; judgment of forfeiture, and the case to be heard in chancery.*